How's my sound? Yes, I can hear you great. Okay, great. May it please the Court, counsel, Officer Walsh is entitled to qualified immunity because not only was it objectively reasonable in his actions, but at the very least, it was not clearly established at the time that this incident occurred that he could not continue firing his gun for at most one second after Jordan dropped the knife. Plaintiff bears the burden of showing that it was clearly established through case law existing at that time of similar circumstances such that it is beyond debate that all but a plainly incompetent officer would know what to do here. It's a bright line, and plaintiff has failed. Plaintiff cites to a number of cases regarding tasings. Tasings are fundamentally different, and we all know that. This Eighth Circuit itself has a robust case law on what is and is not a transgression with regard to tasing. Which has evolved and is hardly consistent. It has evolved over time. It didn't evolve like that, right? No, at long time. Correct. Here, there isn't any case. The early panels were shocked by the use of a taser. Then it became widely accepted and understood and better used. Correct. But the first thing about tasing cases that makes them different is that they're not deadly force situations. So they're entirely an opposite for that reason. It's not the same sort of gram factors we're looking at. Second, we all know that a taser completely incapacitates all muscles, rendering you completely incapable of any type of resistance for a full five seconds. Only for certain people. You know, there are people with psychotropic drugs, certain psychological illnesses, that don't respond to tasing and present an unusual danger, right? That's correct. And it's known immediately. Correct? Right. Like Masters. He was continuing to comply the entire time. That's not the situation here. Now, the other thing about them is that because But tasers are typically not deadly force. Absolutely. It's an entirely gram factor situation. Correct. Only under unusual circumstances. Correct. The real issue here, the heart of it is if you look at Judge Menendez's opinion, is that she bifurcates the shots into two separate categories. And the issue really is that, you know, clearly we do have at least a case that says that as the conditions on the ground evolve and change and if the officer has an opportunity to observe, understand those evolving conditions, and the use of deadly force or use of force is no longer justifiable, that it's appropriate to say that you could have the second half of the conduct be inappropriate and not protected by qualified immunity while the first half could be. This, I think, is the first case in which someone's taken a three-second or two-second block of time or something and split it into two observable changes. And I assume you think that's the wrong approach, that your position is, is that if you were justified originally in using deadly force and you use deadly force and you continue to shoot until the threat is eliminated and that period of time is like 1.7 or 2.7 seconds. I got to tell you, I read it, but I don't remember the number, but it's short. It's less than that even. Okay, that makes sense because it's seven shots. The question is, if the officer says that they can aim, that the act of aiming is sufficient to give you time to reflect and reassess and reevaluate the situation, like I've gone on and on. I'm sure your position is that's just not how it is. Why was judgment end is wrong when she made that factual determination? I'd like to first step to the clearly established problem because that's the easiest and cleanest hard line. There are no cases that separate a shooting of the entire counter is 1.8 seconds, right? So some subset of that. What's the closest one? In other words, what's the closest? Five seconds. Five seconds. That's the case, too, where the guy has the shotgun and he turns away. That's a bright line, right? The other person's inside a closed door in a house. What case is that? Colby Hutchins. That's five seconds, right? So what we're asking to do, which, incidentally, is the same amount of time that generally a taser will incapacitate someone, right? So there's a constitutional difference you're arguing between two and five seconds, somewhere in between there, or five seconds is the amount of time? Well, if we're going to objectively reasonable, I would say that. But we don't even need to go there because it's five seconds is all that's been clearly established after a bright line change with time to assess. Here, what they're asking us to do is have these preprogrammed computers in their head that they can stop at a millisecond, right? That's what we're talking about here. Because, and if that's the case. Well, you might point out that there wasn't any threat to the officers. There was not a threat to anybody. Well, no. There was the shooting victim had, I think, allowed the target of his displeasure to go back in the house. He went back inside the house, walked 11 steps, and began a conversation. And the other thing, too, is. . . Where do you get five seconds? I didn't think it was a five-second case. That's my understanding that Colby Hutchins is the five-second case. That's the only one. No, Cole is not a rapid-fire situation. That's the other thing, too. And if there's no officer threat, it's a different case. I agree completely. And I think it's a different situation, too, when you talk about human capacity when you decide whether to do any force versus I'm already doing it in a deadly force situation. Now, I have to see what's going on. I have to assess what's the threat level. I have to decide what to do. I have to tell my hand to stop doing or start doing what I want it to do. Can we do that in a millisecond? Because that's the holding that they want you to have, right? There's no other line over there because they say instantly, immediately, even though that's not in the case law. Instantly and immediately has only meant at least five seconds. They want you to hold that the second. . . Not even the second, frankly, because we would be happy with the second, right? They want less than the second. Well, they said he had time to re-aim. I think that was the crux. . . He's aiming the entire time. That was the crux of the. . . Well, but he changed his. . . He shot, the victim went down, and now he moved his aim down for the. . . That was my understanding of where the district court was focused. Right. The district court focused on re-aimed, and the weapon had fallen away from the body and was unreachable at that point. Well, may I point the court in the direction of Liggins? Because in Liggins, four shots fired, three shots after he's dropped the gun. The case is, the officer had mere seconds to react. That's why we're here. We're here talking about seconds, like that. That's why we're here. We're talking about this guy has this time. What's the L? Did you say Ludwig? No, you said something different. Liggins, L-I-G-G-E-N-S. That is a. . . Is that in your reply brief? It's not in your. . . That's in the reply brief. It's a 2028 circuit case. There they held that it was objectively reasonable to continuing firing shots at a suspect in rapid succession, even though the suspect dropped his gun after the first shot. I don't know how they overcome that. I guess they're going to say a gun is different than a knife. But here they're talking. . . They use. . . This is about. . . Their argument is about reaction time. That's the whole point of what they're saying. Is this an issue of fact or law? It's an issue of law, clearly. Otherwise, we wouldn't ever have any of these cases. The fact is. . . Well, what's the issue? The issue is whether the. . . Whether he changed his aim is a question of fact. That's established. We know he changed his aim. Okay. The question is, was it clearly established whether he could continue shooting his gun even though he didn't have the knife in his hand anymore? And Ligon says, yes. Yes, you can. That has to be the case. That absolutely has to be the case because if that's not the case, then we're telling officers you either die because you decided not to do anything because you were so afraid or your life and your employment status has changed completely. I don't have Ligon's in front of me. Is that a prong one or a clearly established case? That was objectively reasonable. And it's on page 17 of the reply brief. The other thing to look at. . . Oh, I would like to reserve the remainder of my time if that's possible. That's your choice. Thank you. Do you have a follow-up question? Okay. Thank you. Mr. Gifford? May it please the Court, Ben Gifford on behalf of Plaintiff Appellee Florine Ching. This interlocutory appeal presents a narrow question. Is it clearly unreasonable to shoot an individual when he is lying disarmed on the ground? The answer to that question is yes. Officer Walsh spends the bulk of his brief arguing that he was justified in using force initially. But the reasonableness of Officer Walsh. . . When the word totality comes to mind, you can't isolate one fraction of an incident and say the issue turns on how that incident stands by itself. In an appeal from final judgment, I think that you are absolutely correct. But because we are here on appeal from a denial of qualified immunity and the scope of review in an interlock. . . Including clearly established. Well, the clearly established question, given that we're looking only at the shots fired after Mr. Jordan was lying disarmed on the ground, is whether it's clearly unreasonable to shoot an individual who is lying disarmed. Whether it's also clearly established that you would segregate a continuous shooting in this manner. I don't think so, Your Honor. I think. . . You don't think that that's before us? No, I don't, Your Honor. I think. . . Give me the case that you're relying on. There's no case from this circuit that discusses specifically whether segmentation is a factual question that can't be challenged. I would say that Roberts v. City of Omaha is the most similar. But you're talking prong one. I'm talking prong two. Before we get to prong two, though, Your Honor. . . I want to know. She said her easiest answer to Judge Erickson's question was prong two. So that's where you should be focused. Again, though, Your Honor, it's prong two with respect to the shots fired once he's disarmed on the ground. And the Tenth Circuit's decision in Fancher v. Barrientos. . . You can't. . . That's why I used the word totality, borrowing from umpteen Supreme Court cases. It applies to the clearly established analysis. I agree that a totality applies, Your Honor. But my argument here is that Officer Walsh cannot challenge the segmentation in the first place because that is a factual dispute. And so without a . . . It's a decision to segment a factual dispute or a legal dispute given this, you know, the underlying facts. I mean, if we assume the facts as found by Judge Menendez, then isn't segmentation of that a question of law to decide? I don't think so, Your Honor. I think it's a question of fact. And, again, just to finish my answer to Judge Loken, the Tenth Circuit's decision in Fancher v. Barrientos, which we discussed, I believe it's pages 1199 and 1200 of that opinion, rejects this precise argument that segmentation can be challenged on appeal from a denial of qualified immunity. And the Tenth Circuit there says that to challenge segmentation is just to challenge the factual question, whether there continued to be a threat as viewed by a reasonable officer. And so I think . . . I'm sorry. I've got to make . . . I'm making notes, and I'm looking at your table of authorities, and I don't see anything that sounds like the case you just cited. F-A-N-C-H-E-R. Pardon? F-A-N-C-H-E-R. Oh, I thought it started with S the way you said it. Sorry. F as in Frank. So Fancher v. Barrientos is . . . No, I don't see one starting with F. Are you looking at the red brief, Your Honor? Pardon? Are you looking at the red brief? It starts with F. It says . . . You know . . . Lemon v. . . We got 27 cases this week, and I haven't read every . . . And you give me a table of authorities, both of you, with 53 cases, most of which I'd conclude didn't matter much if I read them all. And then you expect me to have read them all, and I haven't. So now if you're going to . . . Okay. So I'm going to say, okay, 2013, that ain't exactly yesterday in clearly in qualified immunity law. So again, Your Honor, I don't think that the . . . How many times has the Supreme Court reversed the denial of qualified immunity since 2013? Probably eight? I don't have an exact number, but to the extent . . . At least six. To the extent the Supreme Court has jurisdiction to reverse denials from qualified immunity, it's only where, and the question at issue is a factual question, it's only where the record blatantly contradicts the version of facts as alleged by the plaintiff or assumed by the district court. And so here we do not have a blatant contradiction. And so that initial factual question, which again, to Judge Erickson's question, is just a question of whether there is a threat after and before Officer Walsh lowered his gun. Okay. Let's assume you're wrong on that. Okay. Assuming . . . On the question . . . Assuming that I'm wrong on that and assuming that you would like to review or believe that you have jurisdiction to review whether the shots were segmented, then the cases that we cite in our brief, I think that probably most relevant are Masters v. City of Independence and Jackson v. Stare, which opposing counsel discussed briefly or at least referenced by means of the reference to tasing cases. Those cases make clear that there is a bright line. Actually, the officer in Masters argued that there was not a bright line, and this Court explicitly said, and I'm quoting, but there is. And the line is when the individual no longer poses a threat. And after that . . . But, you know, if you look at Stare, it's really quite different because there's adequate time to make an observation. The claim here is that there's no, as a matter of law, it's not clearly established that parts of a second is a sufficient period of time to make an assessment that would give rise to liability, right? And I get the argument and I get the Fancher v. Barrientos analysis that those are factual questions that are not subject to the jurisdiction of the Court on appeal. But there's, on the clearly established prong, isn't that . . . That question's unanswered, right? I mean, what, you know, legally, what's sufficient time to process, right? And it's apparent that Judge Menendez took the testimony that they continued to be aimed shots and said there was time to change the focus and the aim, and that that is a volitional act and that is clearly established, right? And I look at the whole thing and I'd say, you know, certainly I've never been in this situation, but, you know, you can fire a series of aimed shots at a moving target and it can be fired in a matter of seconds. You know, deer hunting, you fire two shots sometimes. I mean, it's the way that it is, right? And there's not really a lot of time where people are making free and volitional decisions, right? And what's your best argument for, in this 1.7 seconds total, that there was sufficient and adequate time for a reasonable officer to be held to the standard where they should have made a different decision? My best frontline argument is that that's a factual question and that perhaps at the bounds it becomes a legal question when the facts are such that no reasonable jury could find that an officer had sufficient time. But the core question of sufficient time is factual. In terms of the case, I think Masters v. City of Independence. You're telling us to send it to just tell the district court to encourage this to come up at summary judgment. This will come up again at summary judgment, and the district court made clear at joint appendix 28, which is page 15 of the hearing on the motion for judgment on the pleadings, that by denying qualified immunity here, the court was not predisposing how it would rule at summary judgment. It made clear that other evidence would come in at summary judgment, including probably most importantly, expert reports from use of force experts who could testify to officer reaction times. And at that point, it's quite possible that the district court would grant summary judgment, and if the district court did, then there would be a final judgment for this court review if this court wanted to opine on the question whether a jury could find that an officer in this position had sufficient time. We simply don't think that we are there yet, because this is an interlocutory appeal from a denial of qualified immunity at the judgment on the pleading stage. And I'd like to briefly address. Of course, increasing the litigation expense is contrary to purposes of qualified immunity. I'm glad you brought that up, Your Honor, because I completely agree with you that one of the overriding goals of qualified immunity is to resolve the issue as early as possible, because qualified immunity is an immunity from suit. However, there is an inherent tension, and this is discussed in Justice Breyer's opinion in Johnson v. Jones, between the final judgment rule and the policy of resolving qualified immunity questions at the earliest possible stage. Do you know who dissented from the first case, Supreme Court case, applying Johnson v. Jones? Justice Breyer? Yes. In Barrons v. Pelletier? Yeah. Absolutely. But I think that the core point. That shows that there's more than tension. There's constant disagreement on this question. I agree. But I think that the way in which the policy toward deciding qualified immunity at the earliest stage interacts with the generally applicable final judgment rule is that Mitchell v. Forsyth said, appeals from denials of qualified immunity are permissible only insofar as they turn on questions of law. And I think that that makes a lot of sense, because if an officer is alleged to have violated a right that was not clearly established at the time, or — But clearly established is an issue of law. Clearly established is an issue of law. And to the extent — But there are obviously facts underlying it. And again, though, to the extent that even assuming the facts as alleged by the plaintiff, no constitutional violation is made out, then the officer should not have to go through trial because the officer wins as a matter of law. However, where there are factual disputes and qualified immunity turns on those factual disputes, the officer doesn't have an immunity from suit. The officer needs to go through discovery and perhaps trial in order for those factual disputes to be hashed out. And candidly, we did not cite this opinion in our brief because I only came across it recently. But Judge Brennan for the Seventh Circuit recently had a case called Smith v. Finkley where he talks about this tension between the general preference for final judgments and the preference for resolving qualified immunity at the earliest possible stage. And I think that that discussion is exactly on point here. I just want to briefly respond to my friend's discussion of Liggins because Liggins comes up for the first time in the reply brief. I think that my response to Liggins is not that the defendant or that the suspect had a gun, although I do think that that's relevant. It's that the district court explicitly declined to segment its analysis of the shots. And so it viewed the four shots as a single instance of the use of force. And that was an appeal from a denial of qualified immunity. And this Court was down by that framing when analyzing Liggins. And so the only question before this Court in Liggins was, is it unreasonable to shoot at all at somebody who is running toward you with a firearm in his hand? And this Court said it was reasonable to do that, but that has no bearing on this case here. I think my friend also mentioned how a number of the cases that we discuss are taser cases. I think that helps us. Well, if the district court, I haven't read Liggins, if it in effect entered or directed the entry of qualified immunity, then under your argument, the district court's approach, that was wrong. We should have remanded. The district court denied qualified immunity in Liggins. So Liggins must have reversed? Liggins reversed on the undisputed facts. And there was no factual dispute in Liggins. The appeals court took as given that the four shots were a single use of force and said that that use of force, given the other undisputed facts, was reasonable in that context. My friend cites Liggins for the proposition that three of the shots were fired after the suspect was on the ground and that that somehow undermines our case. My argument here is that Liggins says nothing about subsequent shots because the use of force. And I do just want to emphasize how narrow the question is before this court right now. This court is not deciding, certainly not deciding, that Officer Walsh did or did not use excessive force. It's not even deciding whether a jury could find that Officer Walsh used excessive force. The court is only deciding, in this narrow interlocutory posture, whether the video evidence here blatantly contradicts the facts as alleged by the plaintiff and found by the district court. And there we think that the bar is incredibly high to find a blatant contradiction and we think that it is not satisfied here. If there are no further questions, I would ask that you affirm. What does the video have to blatantly contradict? The facts as alleged by the plaintiff or as assumed or found by the district court. And then that deals with the two sets, the bifurcation? Is that the factual issue that you're talking about, that if the video doesn't clearly undermine the district court's factual findings, you win? Not that we win, just that this court would be bound to affirm. Or I guess the court could dismiss for lack of ---- Disappeal, right? I mean ---- Yes, if the video does not blatantly contradict the district court's segmentation analysis. Thank you. Thank you. Thank you, Your Honor. First of all, I would like to point out that Hutchins does not clearly establish anything, because in Hutchins, which is a tasing case or no, wait, that was a case where he turned around, the guy went inside the house. There was no threat. It's not an on-point case. It didn't establish anything here. The question of fact of whether they can bifurcate the shootings, that's not a fact. The facts are how many shots, how far away he was, what stance was the plaintiff taking, not what you do with those facts. And that is consistent with what you find in Dooley and in Liggins. They're all talking about what you do with those facts. Most of these cases that plaintiff is talking about, we don't have a time stamp, because it was before body-worn camera. We don't know what was meant by immediately or he has stopped the threat. Most of these cases are summary judgment cases like Liggins. And opposing counsel argues that this is a case where it's one of the rare cases where discovery should be allowed to proceed. And what happens at summary judgment once all the facts are known may be different and this question may be fully squared up and the right one for us to be deciding, but it's too early. Why is he wrong? They're wrong because we have body-worn camera in these cases that show exactly what happened and when it happened. The fact that we can roll over here and determine when these shots took place is only because we have modern technology that allows us to pause and bifurcate frame by frame. That doesn't mean that humans need to react that way. Why isn't the district court's finding that there was time, you know, the aiming, the falling, the knife falling away? The district court found that there was an interlude there that was a basis for bifurcation. Why isn't that a factual finding? Well, if you look at all of these cases that we're talking about, the courts are talking about time that's passed or it's implied in there. We don't know how much time has passed. Therefore, we can't render a conclusion. Here we know the time that's passed. Don't we have to assume, given our limited ability to review facts at this point, that that factual finding is correct? And so aren't we really left, like you were saying, originally at the second prong? Is it clearly established? Or does the video record just so plainly establish? Because there are cases where we'd say, well, if there's a video of the incident and plainly establishes that the district judge is in error, that we can believe our own eyes, so to speak. Is that where you're at? It's not clearly established. And you can determine that here because woven through all of these cases is what this Court can do with the facts of how much time was or was not known. That's why we're here and we can decide it now, because that's not a fact issue. That's a legal issue. What do you do with the facts as applied to the law? What would Walsh have known in that moment if he was even capable of thinking? Because if he needs to think of it. That's a prong one analysis, right, that you're getting to? So you're saying you win on that and clearly established. We do win on that. But on both. However, focusing on the clearly established, where's the case? Where's the case that says, cities, you're on notice, you better change how you do everything, because now you're requiring officers to do something that's not humanly capable, that they need to be a superhero or Neo from the Matrix capable of bending around. Well, but I think your friend on the other side is suggesting there may be evidence submitted that it is possible that, in other words, X. But at summary judgment, that evidence would be presented. No, that evidence should be put in the complaint. Where is that in the complaint, that that's even humanly possible? And why, then, are the courts able to decide whether it's clearly established based on whether we know the time or we don't know the time? Five seconds is enough. Why are they even considering that if they're not even allowed to consider it? They're considering it because it's a legal conclusion and they're now applying it to the facts or, excuse me, to the law. Why have any of these cases, then? Where are there factual allegations that support this legal conclusion, that a human mind is capable of assessing a threat, deciding what to do? There's nothing there. Why do they say five seconds is enough if they're not allowed to consider that? It's woven through all of these cases. The fact that also Judge Loken pointed out that there's 1,000 cases here and nobody knows or they have to be like, okay, what, is this the Poncho case, is this the turning around case, that shows it's not clearly established. We're all punting with 30 million cases here because it's no consensus. And we're like, this line here means something and this line there means something and we're arguing about it over the course of years because there isn't a case more on point than Liggins. That shows it's not clearly established. Oh, I'm out of time. Sorry.